**NOT FOR PUBLICATION**                                                       **CLOSED**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                :
MANUEL CALDERON,                :
                                :    Civil Action No.
            Petitioner,         :    10-3398 (FSH)
                                :
       v.                       :    **O P I N I O N**
                                :
ERIC H. HOLDER, JR., et al.,    :
                                :
            Respondents.        :
_____:

**Faith S. Hochberg**, District Judge:

On July 2, 2010, Petitioner, a native of Columbia who entered the United States in 1988, filed the instant Petition for a Writ of Habeas Corpus (hereinafter "Petition"), pursuant to 28 U.S.C. § 2241, challenging his upcoming removal to Columbia and the detention by the Department of Homeland Security (hereinafter "DHS")[1] which is to precede such removal.

For the reasons set forth below, the Court will deny the Petition.

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a).  The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS. See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

**BACKGROUND**

While the Petition is rather lengthy, the gist of the statements and allegations made therein can be reduced to the following:

Petitioner entered the United States in January 1988, and – in 1995 – pled guilty (and was sentenced, upon that plea, by the United States District Court for the Eastern District of New York) to a federal prison term; that plea and sentence were based on the charges of attempted delivery of 5.8 kilogram of 86% pure cocain. See Pet's Ex. A, Docket Entry No. 1-1.

In 2000, Petitioner was arrested on state charges (filed by the State of Florida) based on a murder that took place in 1992. While being acquitted on the murder charges, Petitioner was eventually convicted on conspiracy charges associated with that murder; Petitioner's incarceration associated with conviction on these conspiracy charges expired on August 1, 2010.[2] See Docket Entry No. 1, at 5-6.

During the interim between his initial acquittal and later conviction on Florida conspiracy charges, Petitioner was ordered removed by his immigration judge; Petitioner's appeal to the Board

---

[2] Petitioner asserts that his criminal proceedings initially resulted in a mistrial, and he was acquitted on re-trial; however, the appellate level of Florida state courts reversed that acquittal and reinstated the conspiracy charges, which eventually resulted in the prison term Petitioner has just completed. See Docket Entry No. 1, at 5-6.

of Immigration Appeals was denied, and Petitioner's application to the United States Court of Appeals for the Third Circuit challenging that denial was dismissed (and the Supreme Court of the United States denied Petitioner certiorari as to that dismissal). See id. at 5-7.

Fighting his removal, Petitioner filed a coram nobus application with the Eastern District of New York and an appeal with the Florida courts. See id. at 7. Meanwhile, Petitioner seeks this Court's order staying his removal and releasing him from confinement; he explains that he seeks such order because "he is afraid he will be deported before the direct appeal in his Florida case and the Coram Nobus petition . . . are decided."[3] Id. at 7.

Petitioner maintains as the jurisdictional basis for his instant application that this Court can issue a habeas writ to Petitioner because "[b]oth decisions [i.e., the decisions

---

[3] Since Petitioner asserts that he "is in desperate need of time to fully litigate the Coram Nobus petition . . . and his direct appeal in his Florida case," Docket Entry No. 1, at 8, this Court is not entirely clear as to why Petitioner also seeks release from confinement, since indeed it appears that the time needed to litigate these actions is identical if Petitioner is held in DHS custody or released on bail or parole. Similarly, Petitioner's explanation that he needs time to obtain a decision of the Eastern District of New York and Florida court appears half-hearted at best, since Petitioner's reference to his need to litigate these matters "fully" suggests that Petitioner is seeking delay of removal until the Second Circuit and the Supreme Court of the United States would rule on his coram nobus, and the Supreme Court would deny him certiorari as to his Florida proceedings. However, these observations are not dispositive to the issues presented in this matter and, therefore, the Court's analysis does not depend on veracity of Petitioner's assertions.

anticipated to be issued by the Florida courts and by the Eastern District of New York,] are not likely to come down this year," id. at 7, and – moreover – these pending matters "are not likely to be decided . . . in the [foreseeable] future." Id. at 2.

## JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody,"; and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner either already became or will become detained within its jurisdiction and he asserts that his detention is not statutorily authorized and violates his constitutional rights.

## STANDARD OF REVIEW

Pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v.

Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## DISCUSSION

### I.   APPLICABLE LEGAL REGIME

#### A.   Petitioner's Challenges Associated With His Removal and Requests for Stay Are Misdirected

On May 11, 2005, President Bush signed into law the REAL ID Act of 2005. See Pub. L. 109-13, Div. B, 119 Stat. 231 (May 11, 2005). Section 106(a)(5) of the REAL ID Act of 2005 amends 8 U.S.C. § 1252 to provide that, "[n]otwithstanding any other provision of law (statutory or non[-]statutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision . . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e)." See REAL ID Act of 2005, § 106(a)(5), to be codified at 8 U.S.C. § 1252(a)(5).

Moreover, pursuant to 28 U.S.C. § 1631,

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court

from which it is transferred.

The applicable venue provision, 8 U.S.C. § 1252(b)(2), provides that a "petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." Since it appears that the seat of the immigration court that issued the order of removal at issue was in New Jersey, Petitioner's application challenging his removal (and the ensuing request for stay) should have been filed with the United States Court of Appeals for the Third Circuit.

Therefore, Petitioner's challenges to his removal (and his request for stay of removal) will be dismissed for lack of jurisdiction, pursuant to the REAL ID Act. Moreover, in light of the fact that the Court of Appeals already addressed Petitioner's challenges to his removal and dismissed these challenges, this Court finds it not in the interests of justice to transfer Petitioner's application to the Court of Appeals. However, this Court stresses that the dismissal for lack of jurisdiction is not a dismissal on substantive bases, and this Court's decision to dismiss the portion of this matter govern by the REAL ID Act does not prevent Petitioner from filing an application with the Court of Appeals for the Third Circuit.[4] That leaves the Court with the portion of this matter based on Petitioner's assertion that he

---

[4] This Court expresses no opinion as to the procedural propriety or substantive merit of such application.

Page -6-

should be released from confinement because Petitioner fears that the decisions in the Eastern District of New York and Florida cases are unlikely to be issued during 2010 and might not be even be issued in the foreseeable future.

However, as the discussion below illustrates, Petitioner's fears do not provide this Court with a valid basis for issuance of a habeas writ.

    **B.**    **Circumstances Warranting Issuance of a Writ**

        **1.**    **Removal Period and Its Triggering Events**

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either ruled upon by the BIA or the time to appeal to the BIA expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the

date the alien is released from confinement. See 8 U.S.C. § 1231(a)(1)(B).

If – during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien -- the alien is subjected to a qualifying superceding event, e.g., the alien is released from confinement, or if this alien is detained on a new charge, or the alien files an appeal challenging his/her order of removal, such superceding event start the alien's removal period anew. See 8 U.S.C. § 1231(a)(1)(B).

> [Indeed, there cannot] be ["]only one["] removal
> period[:] . . . that is the only rational reading of the
> statute. . . . [T]he statute provides that the removal
> period begins on the latest of several dates. The
> passing of one date does not stop the operation of the
> statute. In a sense, the only way to apply the statute
> to a given situation is retrospectively. That is, the
> removal period begins when the removal order becomes
> final. If a court issues a stay, the removal period
> begins [anew] when the stay is lifted [or when such new
> appellate proceeding ends]. Therefore, the only way to
> determine when the removal period begins, or began, is to
> look at what events already have occurred. If there is
> another [potential triggering] event, there is another
> potential beginning date for the removal period. The
> only sensible reading of this provision is that [DHS] is
> required to effectuate the removal within 90 days of
> certain events, but [DHS] will have another 90 days if
> another one of the [statutorily-]designated events occurs
> at a later date. The obvious reason for this is that
> [DHS]'s authority to effect the removal is suspended due
> to the occurrence of the later event.

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS, 2002 U.S. Dist. LEXIS

795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

### 2. Zadvydas Period

While, during the 90-day "removal period," the alien must be detained, see id. § 1231(a)(2), after the 90-day removal period, the government may further detain the alien or release him subject to conditions of release. See id. § 1231(a)(6). In Zadvydas, the Supreme Court held that aliens may be detained further under § 1231(a)(6), although only for "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit indefinite detention").

Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month " presumptively reasonable period of detention." Id. at 700-01. However, coining this "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval

> confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months*. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).

### C. <u>Zadvydas</u> Cannot Be Triggered by Petitioner's Fears

Here, Petitioner seems to argue that a habeas writ could be issued directing Petitioner's release on the basis of his fears about the timing of decisions by the Eastern District of New York and Florida courts (or Petitioner's appeals of those decisions). See Docket Entry No. 1, at 5-7. If so, Petitioner errs. In order to obtain a habeas writ from this Court, Petitioner must show that – regardless of Petitioner's cooperation – the government: (a) was unable to remove Petitioner to Columbia during the period of such removal efforts lasting longer than six months; and (b) such removal is unlikely to be executed in the foreseeable future.

This showing cannot be made in Petitioner's current circumstances; indeed, Petitioner's <u>Zadvydas</u> period has just begun, and Petitioner offers the Court no evidence suggesting that Petitioner's removal to Columbia is not forthcoming. Conversely, Petitioner's instant submission appears to the suggest the opposite, <u>i.e.</u>, that removal is virtually certain and forthcoming. Further, if a court does direct stay of Petitioner's removal, than the removal becomes not reasonably likely in the foreseeable

future, but such order would be irrelevant to Zadvydas analysis: Petitioner's Zadvydas period would stop running upon issuance of a stay order and re-start anew upon expiration of such order (in the event Petitioner is still subject to removal). Therefore Petitioner is not able to meet the standard for a writ of habeas corpus based on Zadvydas.

Hence, while qualifying his instant application as a petition for a writ of habeas corpus, Petitioner is effectively asking this Court to: (a) reach outside its jurisdiction limited by the REAL ID Act, and (b) "overrule" the decisions by both the Board of Immigration Appeals and the Court of Appeals for the Third Circuit that had resolved Petitioner's immigration challenges. That this Court cannot do. Therefore, the portion of the Petition seeking a habeas writ on the grounds of alleged possibility that Petitioner's challenges to criminal convictions underlying his removal might not be resolved in the foreseeable future will be dismissed.[5]

In the event Petitioner's detention associated with his

---

[5] Moreover, even if this Court were to hypothesize that the Court of Appeals issues stay on the grounds of Petitioner's matters currently pending before the Eastern District of New York and Florida courts, the fact of Petitioner's detention in anticipation of resolution of these matters would not amount to a valid basis for a Zadvydas claim. Cf. Pierre v. Weber, 2010 U.S. Dist. LEXIS 32643, at *15 (D.N.J. Mar. 31, 2010) (a detained alien "cannot, by definition, be in danger of a de facto life sentence - so long as the United States judiciary remains operable, any [legal matter presented for judicial review] would necessarily become final at a certain foreseeable point in time").

removal exceeds the period of six months, and – regardless of Petitioner's cooperation with the government removal efforts – Petitioner develops a non-speculative basis for the argument that his removal is not likely in the foreseeable future, Petitioner may file a new § 2241 application challenging his detention.

## **CONCLUSION**

For the foregoing reasons, the Petition will be denied.

An appropriate Order accompanies this Opinion.


                                      /s/ Faith S. Hochberg
                                        **Faith S. Hochberg**
                                **United States District Judge**
Dated: August 30, 2010